UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BEVERLY MARTIN, ET AL.                           CIVIL ACTION

VERSUS                                           NO: 07-5813

STATE FARM FIRE AND CASUALTY                     SECTION: "A" (3)
COMPANY, ET AL.

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment Based Upon Plaintiffs' Submission of Fraudulent Receipts and Documents (Rec. Doc. 68)** filed by Defendant State Farm Fire and Casualty Company. Plaintiffs Beverly and Cornell Martin oppose the Motion. The Motion, set for hearing on February 10, 2010, is before the Court on the briefs without oral argument. For the reasons that follow, the Motion is DENIED.

## I. BACKGROUND

A fire occurred on August 14, 2006 at the 11265 Notaway Lane residence of Plaintiffs Beverly and Cornell Martin ("Plaintiffs"). Petition, ¶ 7. Plaintiffs allege that the fire was caused by the shoddy construction work of Bryant Construction, the contractor who repaired damage to their home caused by Hurricane Katrina. *Id.* at ¶¶ 9-10.[1] Plaintiffs submitted a claim to their insurer, Defendant State Farm Fire and Casualty Company ("State Farm"), who investigated the damage and remitted $89,387.51 in insurance proceeds to Plaintiffs. Memorandum in Support of Motion for Summary Judgment Based upon Plaintiffs' Submission of Fraudulent Receipts and Documents (Rec. Doc. 68) ("Motion"), pg. 3. Plaintiffs filed suit against State Farm on April 10,

---

[1] Defendant State Farm Fire and Casualty Company has alleged in its Answer that the fire was caused by arson. Answer and Request for Jury (Rec. Doc. 13), pg. 13.

2007 in Louisiana state court, alleging that their insurance policy entitled them to more money. Petition at ¶¶ 7, 12, 19 -21.[2] State Farm then removed the suit to this Court. *See* Notice of Removal (Rec. Doc. 1).

Plaintiffs submitted a settlement demand to State Farm on December 22, 2008 in response to which State Farm requested more information as to the basis for Plaintiffs' demand. Motion at pg. 4. During ongoing settlement discussions, the parties jointly moved for an extension of discovery deadlines twice, once on January 31, 2009 and again on February 17, 2009. *See* Exparte/Consent Motion for Extension of Deadlines (Rec. Doc. 36); Exparte/Consent Motion to Continue Trial and Pretrial Conference (Rec. Doc. 39). Plaintiffs submitted documentation to State Farm substantiating their claim on April 7, 2009. *See* April 7, 2009 correspondence from C. Theodore Alpaugh, III to Patrick D. DeRouen attaching supporting documentation, Exhibit 2B in support of Motion. This documentation consisted of a contract between Plaintiffs and McMillian & Holden, LLC ("M&H") for repair work on Plaintiffs' home, an inventory of Plaintiffs' personal property, an accounting of expenses Plaintiffs incurred while they were living outside of their home after the fire, four receipts for work performed on Plaintiffs' home, and a proposal from M&H for repair work on Plaintiffs' bathroom. *Id.* The four receipts are of particular significance to the Motion. Receipt number 201614 is for $76,000 paid from Beverly Martin to "CM."[3] Receipt number 201634 is for $97,000 paid from "CM" to "McM / Holden." Receipt number 201621 is for $87,000 paid to "CM" from "McMill and

---

[2]Plaintiffs also named Bryant Construction, Terry Ferguson and "Robert," who they allege to be the principals of Bryant Construction, and "ABC Insurance Company," Bryant Construction's insurer, as defendants.

[3]"CM" presumably stands for Cornell Martin. The Court also assumes that receipt number 201614 inadvertently lists "CM" as a payee. Because the other three receipts are for payments to M&H, the Court presumes that receipt number 201614 was intended to reflect M&H as a payee, but there is insufficient information to firmly establish who was supposed to be listed as the payee of receipt number 201614.

Holden." Receipt number 201651 is for $12,000 paid from "[illeglible]/CM" to "Holden." State Farm then issued a subpoena to M&H requesting all of its records concerning Plaintiffs. Motion at pg. 5. Candince McMillian, owner of M&H, responded on its behalf and stated that it had no records regarding Plaintiffs and that "the only correspondence between Ms. Martin [and] myself regarding her property . . . was an estimate for repairs. However, we did not retain a copy of this estimate because we were never contracted to make any repairs." April 27, 2009 correspondence from Candince McMillian, Exhibit 4 in support of Motion. State Farm then elicited a sworn statement from Ms. McMillian wherein she stated that M&H had not entered into a contract with Plaintiffs, had not received any money from Plaintiffs, and had not performed any work for Plaintiffs. April 30, 2009 Sworn Statement of Candince McMillian, Exhibit 5 in support of Motion. The pertinent portion of Ms. McMillian's statement is as follows:

> "**Q. Did you ever do a bid or an estimate for Miss (sic) Martin for work on her house?**
>
> A. Yes. I did an estimate at some point for Miss Martin's structure . . . When Miss Martin did not contact me to follow-up or to do any work, I lost track of the estimate. I didn't keep it.
>
> **Q. So . . . you prepared a document, gave it to her, but since Mrs. Martin didn't ask you to do the work, you lost the contract and you don't have a copy of it - or lost the proposal and you don't have a copy of it?"**
>
> A. Exactly.
>
> **Q. Ms. McMillian, I'm going to show you what has been produced by Miss (sic) Martin and her lawyer that I've marked as 4/7/09 Settlement Demand**

**Pages 5 and 6, and it appears to be a two-page proposal from McMillian and Holden to Mr. and Mrs. Cornell Martin, Turn Key Realty for property address 11265 Notaway Lane. Miss McMillian, did you draft or prepare the document hat I'm referring to as Pages 5 and 6?**

A. No, sir, I did not.

**Q. Is this your signature on page 6?**

A. No, it is not.

. . .

**Q. [D]id you write the words or type the words on this contract?**

A. No, sir, I did not.

**Q. How could you be sure that this is not your contract?**

A. Because my contracts, the ones that I type up myself from computer (sic) have a certain format underneath my letterhead and this contract format is not the same.

. . .

**Q. Miss McMillian, I'm going to show you four receipts that total approximately $270,000. The receipts indicate that Beverly and/or Beverly and Cornell Martin paid you . . . this money. I want you to take a look at these receipts and tell me if you received any of the money indicated on these receipts.**

A. I'm looking at receipt No. 201634 . . . I did not write this receipt nor did I sign it. Looking at receipt No. 201651 . . . I did not write that receipt nor did I sign it.

4

**Q. Did you receive the money [indicated on the receipts]?**

A. No.

**Q. Next is receipt No. 201614.**

A. This one says Beverly Martin. I don't know . . . She must have made an error on this one, but in any case, the amount indicated is $76,000. I did not write this receipt nor did I receive this money. And the final one is 201620 . . . [I]t has something very close to my signature on there, for the amount of $87,000. I did not receive this money.

**Q. Miss McMillian, I'm going to show you another document . . . This appears to be a proposal or contract or an agreement dated March 20, 2009 for work on the bathroom at Miss Martin's house at 11265 Notaway Lane. Did you prepare this document []?**

A. No, I did not.

**Q. Is this your signature at the bottom on Page 32?**

A. No, it is not.

**Q. Is that the correct spelling of your name underneath what purports to be your signature at the bottom of Page 32?**

A. No, it is not. She has it spelled C-A-N-D-A-N-C-E and my name is spelled C-A-N-D-I-N-C-E.

**Q. [T]he contracts that we're referring to on Page 32 indicates (sic) a labor and materials price of $3,2950 . . . did you receive any of this money?**

A. No, I did not.

**Q. And did you do any of the work?**

A. No, I did not.

*Id.* at pp. 8-12. Based on Ms. McMillian's statement, State Farm denied further payments on Plaintiffs' claim via a June 30, 2009 letter. Motion at pg. 10; June 30, 2009 correspondence from Kara Carpenter to Beverly Thomas Martin and Cornell Martin, Exhibit 2 in support of Motion for Summary Judgment on Issue of Policy Cancellation (Rec. Doc. 101) (denying Plaintiffs' claim because "[i]t was determined [that they] were not truthful . . . in the presentation of [their] claim."). State Farm now moves to dismiss Plaintiffs' suit based on their alleged submission of false information in support of their insurance claim.

## II. STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id., citing Anderson*, 477 U.S. at 248. The court must draw all justifiable inferences in favor of the non-moving party. *Id., citing Anderson*, 477 U.S. at 255. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id., citing* Fed. R. Civ. Proc. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Conclusional allegations and

denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993), *citing Anderson*, 477 U.S. at 250.

### III. **DISCUSSION**

State Farm argues that the terms of its insurance policy with Plaintiffs entitles it to deny coverage if Plaintiffs "intentionally concealed or misrepresented any material fact relating to" their insurance claim. Motion at pg. 10. Assuming this to be true, State Farm still cannot prevail on summary judgment because Plaintiffs have introduced sufficient evidence to create a material issue of fact as to whether the documentation they submitted in support of their claim was false.

State Farm, pointing to the sworn statement of Ms. McMillian, argues that Plaintiffs have submitted fraudulent evidence in support of their insurance claim. *Id.* at pp. 12 - 13. The materials Plaintiffs submitted to State Farm in support of their claim purport to be documentation of work performed by, and money paid to, M&H. April 7, 2009 correspondence from C. Theodore Alpaugh, III to Patrick D. DeRouen attaching supporting documentation, Exhibit 2B in support of Motion. This documentation is inconsistent with the sworn statement of Ms. McMillian, which asserts that M&H never performed, or accepted money in return for, repairs to Plaintiffs' 11265 Notaway Lane residence. April 30, 2009 Sworn Statement of Candince McMillian, pp. 10 - 11, Exhibit 5 in support of Motion. Ms. McMillian also states that the documents purporting to be a contract between Plaintiffs and M&H and an M&H proposal for work to be performed on Plaintiffs' bathroom are formatted differently than M&H's standard agreements. *Id.* at pp. 9 - 12. Finally, Ms. McMillian states that the signature blocks on both documents contain a misspelling of her first name. *Id.* at pg. 12.

In response to State Farm's evidence, Plaintiffs submit an affidavit from Beverly Martin. Affidavit of Beverly Martin in support of Memorandum in Opposition of (sic) Motion for Summary Judgment ("Martin Affidavit").[4] In her Affidavit, Mrs. Martin asserts that M&H did perform repair work on her 11265 Notaway Lane residence, and that she did pay M&H for this work, except for payments she made directly to subcontractors.[5] *Id.* Her Affidavit also presents testimony that would explain the apparent discrepancies in the documents that purport to be a contract between Plaintiffs and M&H and a proposal from M&H. Mrs. Martin states in her Affidavit that Ms. McMillian typed the documents in question on Mrs. Martin's home computer, which would explain the formatting discrepancy in the documents. *Id.* Mrs. Martin also states that she was unable to print the documents at that time, and therefore that she later signed them on Ms. McMillian's behalf, with her permission. *Id.* Assuming this testimony to be true, one can infer that Mrs. Martin added the signature blocks herself when she signed the documents, which would explain the misspelling in Ms. McMillian's first name.

At the summary judgment stage of litigation, the operative question is whether a reasonable jury could possibly find in the plaintiff's favor. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[4]In its Reply, State Farm challenges the Martin Affidavit, arguing that it is insufficient because it is unsigned and not properly notarized. Response to Plaintiffs' Opposition to State Farm's Motion for Summary Judgment Based Upon Fraudulent Receipts (Rec. Doc. 96) ("Reply"), pg. 5. The Court finds this deficiency to be immaterial because a signed and properly notarized version of the Martin Affidavit is in the record. *See* Affidavit of Beverly Martin in support of Memorandum in Opposition of (sic) Motion for Summary Judgment Based Upon Plaintiffs' Allegations of "Bad Faith" (Rec. Doc. 111).

[5]In its Reply, State Farm challenges Mrs. Martin's testimony regarding payments to subcontractors. Reply at pg. 7. State Farm states that, "[i]n response to this Honorable Court's Order for documentation of their losses, plaintiffs produced only the contract with and receipts from Candince McMillian," but they now come forward with testimony concerning payments to other parties. *Id.* State Farm argues that this undercuts the veracity of Mrs. Martin's testimony. *Id.* While it is true that Plaintiffs' failure to earlier adduce any evidence of payments to subcontractors raises questions about Mrs. Martin's testimony, this failure is not sufficient, when considered with the rest of its evidence, to enable State Farm to prevail on summary judgment.

Based on this record, the Court cannot say that a reasonable jury could only conclude that the evidence Plaintiffs submitted in support of their claim was fraudulent. The conflict between Mrs. Martin's and Ms. McMillian's testimony has created a triable issue of fact that is difficult to resolve without an assessment of their credibility, a question peculiarly within the province of the jury. *See United States v. Allen*, 587 F.3d 246, 257 (5th Cir. 2009) ("Witness credibility and the weight of the evidence are the exclusive province of the fact-finder."). Indeed, issues of fraud are typically referred to the jury *because* they involve determinations of credibility. *See D&J Tire Inc. v. Hercules Tire & Rubber Co.*, ___ F.3d ___, 2010 WL 670634, at *4 (5th Cir. 2010) ("Summary judgment is rarely proper in fraud cases because the intent [required] to establish fraud is a factual question uniquely within the realm of the trier of fact because it so depends on the credibility of witnesses.") (citations and quotations omitted; alteration added); *Triad Elec. & Controls, Inc. v. Power Systems Eng'g, Inc.*, 117 F.3d 180, 196 (5th Cir. 1997) ("[A] fraud claim presents credibility and other fact-based questions that are most appropriate subjects for a jury."). Therefore, the Court must deny State Farm's Motion.

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment Based Upon Plaintiffs' Submission of Fraudulent Receipts and Documents (Rec. Doc. 68)** is **DENIED.**

This 29th day of March 2010.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE