UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BEVERLY MARTIN, ET AL. | CIVIL ACTION |
| VERSUS | NO: 07-5813 |
| STATE FARM FIRE AND CASUALTY COMPANY, ET AL. | SECTION: "A" (3) |

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment Based Upon Plaintiffs' Allegations of "Bad Faith" (Rec. Doc. 99)** filed by Defendant State Farm Fire and Casualty Company. Plaintiffs Beverly and Cornell Martin oppose the Motion. The Motion, set for hearing on March 3, 2010, is before the Court on the briefs without oral argument. For the reasons that follow, the Motion is GRANTED.

## I. BACKGROUND

A fire occurred on August 14, 2006 at the 11265 Notaway Lane residence of Plaintiffs Beverly and Cornell Martin ("Plaintiffs"). Petition, ¶ 7. Plaintiffs allege that the fire was caused by the shoddy construction work of Bryant Construction, the contractor who repaired damage to their home caused by Hurricane Katrina. *Id.* at ¶¶ 9-10.[1] Plaintiffs submitted a claim to their insurer, Defendant State Farm Fire and Casualty Company ("State Farm"), who investigated the damage and, on September 12, 2006, remitted $89,387.51 in insurance proceeds to Plaintiffs. Memorandum in Support of Motion for Summary Judgment Based upon Plaintiffs' Allegations of "Bad Faith" (Rec. Doc. 99) ("Motion"), pg. 3. Plaintiffs filed suit against State Farm on April

[1]Defendant State Farm Fire and Casualty Company has alleged in its Answer that the fire was caused by arson. Answer and Request for Jury (Rec. Doc. 13), pg. 13.

10, 2007 in Louisiana state court, alleging that their insurance policy entitled them to more money. Petition at ¶¶ 7, 12, 19 -21.[2] State Farm then removed the suit to this Court. *See* Notice of Removal (Rec. Doc. 1).

Plaintiffs submitted a settlement demand to State Farm on December 22, 2008 in response to which State Farm requested more information as to the basis for Plaintiffs' demand. Motion at pg. 5. During ongoing settlement discussions, the parties jointly moved for an extension of discovery deadlines twice, once on January 31, 2009 and again on February 17, 2009. *See* Exparte/Consent Motion for Extension of Deadlines (Rec. Doc. 36); Exparte/Consent Motion to Continue Trial and Pretrial Conference (Rec. Doc. 39). Plaintiffs submitted documentation to State Farm substantiating their claim on April 7, 2009. *See* April 7, 2009 correspondence from C. Theodore Alpaugh, III to Patrick D. DeRouen attaching supporting documentation, Exhibit 2B in support of Motion for Summary Judgment Based Upon Plaintiffs' Submission of Fraudulent Receipts and Documents (Rec. Doc. 68). This documentation consisted of a contract between Plaintiffs and McMillian & Holden, LLC ("M&H") for repair work on Plaintiffs' home, an inventory of Plaintiffs' personal property, an accounting of expenses Plaintiffs incurred while they were living outside of their home after the fire, four receipts for work performed on Plaintiffs' home, and a proposal from M&H for repair work on Plaintiffs' bathroom. *Id.* The four receipts are of particular significance to the Motion. Receipt number 201614 is for $76,000 paid from Beverly Martin to "CM."[3] Receipt number 201634 is for

[2]Plaintiffs also named Bryant Construction, Terry Ferguson and "Robert," who they allege to be the principals of Bryant Construction, and "ABC Insurance Company," Bryant Construction's insurer, as defendants.

[3]"CM" presumably stands for Cornell Martin. The Court also assumes that receipt number 201614 inadvertently lists "CM" as a payee. Because the other three receipts are for payments to M&H, the Court presumes that receipt number 201614 was intended to reflect M&H as a payee, but there is insufficient information to firmly establish who was supposed to be listed as the payee of receipt number 201614.

$97,000 paid from "CM" to "McM / Holden." Receipt number 201621 is for $87,000 paid to "CM" from "McMill and Holden." Receipt number 201651 is for $12,000 paid from "[illeglible]/CM" to "Holden." State Farm then issued a subpoena to M&H requesting all of its records concerning Plaintiffs. Motion at pg. 6. Candince McMillian, owner of M&H, responded on its behalf and stated that it had no records regarding Plaintiffs and that "the only correspondence between Ms. Martin [and] myself regarding her property . . . was an estimate for repairs. However, we did not retain a copy of this estimate because we were never contracted to make any repairs." April 27, 2009 correspondence from Candince McMillian, Exhibit 4 in support of Motion for Summary Judgment Based Upon Plaintiffs' Submission of Fraudulent Receipts and Documents. State Farm then elicited a sworn statement from Ms. McMillian wherein she stated that M&H had not entered into a contract with Plaintiffs, had not received any money from Plaintiffs, and had not performed any work for Plaintiffs. April 30, 2009 Sworn Statement of Candince McMillian, Exhibit 5 in support of Motion for Summary Judgment Based Upon Plaintiffs' Submission of Fraudulent Receipts and Documents. The pertinent portion of Ms. McMillian's statement is as follows:

> "**Q. Did you ever do a bid or an estimate for Miss (sic) Martin for work on her house?**
>
> A. Yes. I did an estimate at some point for Miss Martin's structure . . . When Miss Martin did not contact me to follow-up or to do any work, I lost track of the estimate. I didn't keep it.
>
> **Q. So . . . you prepared a document, gave it to her, but since Mrs. Martin didn't ask you to do the work, you lost the contract and you don't have a**

**copy of it - or lost the proposal and you don't have a copy of it?"**

A. Exactly.

**Q. Ms. McMillian, I'm going to show you what has been produced by Miss (sic) Martin and her lawyer that I've marked as 4/7/09 Settlement Demand Pages 5 and 6, and it appears to be a two-page proposal from McMillian and Holden to Mr. and Mrs. Cornell Martin, Turn Key Realty for property address 11265 Notaway Lane. Miss McMillian, did you draft or prepare the document hat I'm referring to as Pages 5 and 6?**

A. No, sir, I did not.

**Q. Is this your signature on page 6?**

A. No, it is not.

. . .

**Q. [D]id you write the words or type the words on this contract?**

A. No, sir, I did not.

**Q. How could you be sure that this is not your contract?**

A. Because my contracts, the ones that I type up myself from computer (sic) have a certain format underneath my letterhead and this contract format is not the same.

. . .

**Q. Miss McMillian, I'm going to show you four receipts that total approximately $270,000. The receipts indicate that Beverly and/or Beverly and Cornell Martin paid you . . . this money. I want you to take a look at**

**these receipts and tell me if you received any of the money indicated on these receipts.**

A. I'm looking at receipt No. 201634 . . . I did not write this receipt nor did I sign it. Looking at receipt No. 201651 . . . I did not write that receipt nor did I sign it.

**Q. Did you receive the money [indicated on the receipts]?**

A. No.

**Q. Next is receipt No. 201614.**

A. This one says Beverly Martin. I don't know . . . She must have made an error on this one, but in any case, the amount indicated is $76,000. I did not write this receipt nor did I receive this money. And the final one is 201620 . . . [I]t has something very close to my signature on there, for the amount of $87,000. I did not receive this money.

**Q. Miss McMillian, I'm going to show you another document . . . This appears to be a proposal or contract or an agreement dated March 20, 2009 for work on the bathroom at Miss Martin's house at 11265 Notaway Lane. Did you prepare this document []?**

A. No, I did not.

**Q. Is this your signature at the bottom on Page 32?**

A. No, it is not.

**Q. Is that the correct spelling of your name underneath what purports to be your signature at the bottom of Page 32?**

A. No, it is not. She has it spelled C-A-N-D-A-N-C-E and my name is spelled C-

A-N-D-I-N-C-E.

**Q. [T]he contracts that we’re referring to on Page 32 indicates (sic) a labor and materials price of $3,2950 . . . did you receive any of this money?**

A. No, I did not.

**Q. And did you do any of the work?**

A. No, I did not.

*Id.* at pp. 8-12. Based on Ms. McMillian’s statement, State Farm denied further payments on Plaintiffs’ claim via a June 30, 2009 letter. Motion at pg. 11; June 30, 2009 correspondence from Kara Carpenter to Beverly Thomas Martin and Cornell Martin, Exhibit 2 in support of Motion for Summary Judgment on Issue of Policy Cancellation (Rec. Doc. 101) (denying Plaintiffs’ claim because “[i]t was determined [that they] were not truthful . . . in the presentation of [their] claim.”). State Farm now moves for summary judgment on Plaintiffs’ claims that State Farm’s refusal to remit insurance proceeds in excess of $89,387.51 constitutes “bad faith” as defined by Louisiana law.

## II. STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id., citing Anderson*, 477 U.S. at 248. The court must draw all justifiable inferences in favor of the

non-moving party. *Id.*, *citing Anderson*, 477 U.S. at 255. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id., citing* Fed. R. Civ. Proc. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993), *citing Anderson*, 477 U.S. at 250.

## III. DISCUSSION

Plaintiffs assert in their Complaint that State Farm's refusal to tender more than $89,387.51 on their claim entitles them to "bad faith damages . . . as per law." Petition at ¶ 24. State Farm argues in its Motion that Plaintiffs' submission of fraudulent documents in support of their claim precludes them from recovering "bad faith" penalties, and that they also cannot recover such penalties because they have adduced no evidence demonstrating that State Farm has "acted arbitrarily, capriciously or in bad faith in the handling and investigation of Plaintiffs' claims." Motion at pg. 14.

Louisiana law provides that insurance companies who are in "bad faith" are liable for penalties under two separate statutes, La. Rev. Stat. § 22:1892 and La. Rev. Stat. § 22:1973. *R.L. Lucien Tile Co., ex. rel. Cage v. American Sec. Ins. Co.*, 2008-1190, pg. 7 (La. App. 4 Cir. 3/11/09); 8 So.3d 753, *citing* La. Rev. Stat. § 22:1892 and La. Rev. Stat. § 22:1973. § 22:1892 provides that a failure to make . . . payment" in a timely fashion, "when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty." La.

Rev. Stat. § 22:1892(B)(1). When the insurer violates Section 22:1892 by tendering partial payment when the failure to tender the full payment is found to be "arbitrary, capricious, or without probable cause," the penalty is "fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs." *Id.* This is the applicable penalty under Section 22:1892 because State Farm has already tendered some money under the policy to Plaintiffs. Motion at pg. 3. La. Rev. Stat. § 22:1973 states that a failure to "pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause," may result in the award of penalties against the insurer "in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." La. Rev. Stat. § 22:1973(B)(6) & C. Both statutes attach penalties when an insurer "fail[s] to timely pay claims *after receiving adequate proof of loss* when the failure is arbitrary, capricious, or in bad faith." *R.L. Lucien Tile Co., ex. rel. Cage*, 8 So.3d 753, *citing* La. Rev. Stat. § 22:1892 and La. Rev. Stat. § 22:1973 (emphasis added). Sections 22:1892 and 22:1973 "are penal in nature and must be strictly construed." *Id.*; *Riser v. Shelter Mut. Ins. Co.*, 43,617, pg. 5 (La. App. 2 Cir. 10/29/08); 997 So.2d 675, 679, *citing Hart v. Allstate Ins. Co.*, 437 So.2d 823 (La. 1983).

"The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious.'" *Riser*, 997 So.2d at 679. An insurer is "vexatious" when it "willful[ly] refus[es] . . . a claim [without] a good faith defense," when it processes a claim in an "unreasonable" fashion "without consideration and regard for the facts and circumstances presented" or when its actions in processing a claim are "unfounded." *Id.; Lewis v. State Farm Ins.* Co., 41,527 (La. App. 2 Cir. 12/27/06); 946 So.2d 708; *Pheonix Life Ins. Co. v. Estate of Graves*, 2006-0040, (La. App. 1

Cir. 11/3/06); 950 So.2d 773; *Combetta v. Ordoyne*, 2004-2347 (La. App. 1 Cir. 5/5/06); 934 So.2d 836.

The evidence is undisputed that State Farm adjusted Plaintiffs' claim in a timely fashion: less than one month after Plaintiffs submitted their claim to State Farm, it had inspected the damage to Plaintiffs' residence and had paid them $89,387.51 in compensation. Motion at pp. 2 - 3.[4] Plaintiffs therefore cannot prove "bad faith" by establishing that State Farm's initial adjustment of their claim was untimely. In addition, there is ample evidence that State Farm's refusal to remit more money to Plaintiffs pursuant to their insurance claim was reasonable. First, State Farm possesses a good faith defense to Plaintiffs claims - that the fire at their residence was caused by arson, a peril not covered by State Farm's insurance contract with Plaintiffs. Second, Plaintiffs did not submit a complete set of documentation supporting their claim until April 7, 2009, and when they did, State Farm obtained information that reasonably supported the conclusion that the documentation was fraudulent.

State Farm asserts, and Plaintiffs do not dispute, that, on September 26, 2006, it received anonymous information that the fire at Plaintiffs' residence was the result of arson. Motion at pg. 3. State Farm duly notified Plaintiffs on November 9, 2006 that it reserved the right to deny their claim because the fire at their residence may have been caused by arson, and that arson was not a peril covered by their insurance policy. *See* November 9, 2006 correspondence from Phil Dixon to Cornell and Beverly Martin, Exhibit A in support of Motion. State Farm therefore had

[4]Plaintiffs opaquely argue in their Opposition that "[w]hile State Farm says that they have paid the above amounts [$89,387.51] simple math shows that they did not." Memorandum in Opposition of (sic) Motion for Summary Judgment Based Upon Plaintiffs' Allegations of "Bad Faith" (Rec. Doc. 111). This argument is belied by correspondence from Plaintiffs' previous attorney conceding that State Farm had in fact paid $89,387.51 to Plaintiffs on their insurance claim for fire damage. *See* December 22, 2008 correspondence from C. Theodore Alpaugh, III to Patrick D. DeRouen and Laurie L. DeArmond, Exhibit 2A in support of Motion for Summary Judgment Based Upon Plaintiffs' Submission of Fraudulent Receipts and Documents.

a good faith defense that Plaintiffs' loss was caused by a harm that fell outside the purview of their insurance policy. Because State Farm had a good faith defense to Plaintiffs' claims, its refusal to pay the amount demanded by Plaintiffs was not unreasonable, arbitrary or capricious. *See Lewis,* 946 So.2d 708; *Pheonix Life Ins. Co.*; 950 So.2d 773; *Combetta v. Ordoyne,* 2004-2347 (La. App. 1 Cir. 5/5/06); 934 So.2d 836.

Second, Plaintiffs failed to submit proof of their loss in a timely fashion, and, when they did so, indicia of fraud independently entitled State Farm to continue its refusal to remit more money to Plaintiffs in satisfaction of their insurance claim, pending resolution of those claims at trial. Plaintiffs did not submit an adequate proof of loss until April 7, 2009. Motion at 16; December 22, 2008 correspondence from C. Theodore Alpaugh, III to Patrick D. DeRouen and Laurie L. DeArmond, Exhibit 2A in support of Motion for Summary Judgment Based Upon Plaintiffs' Submission of Fraudulent Receipts and Documents; April 7, 2009 correspondence from C. Theodore Alpaugh, III to Patrick D. DeRouen and Laurie L. DeArmond, Exhibit 2B in support of Motion for Summary Judgment Based Upon Plaintiffs' Submission of Fraudulent Receipts and Documents. A plaintiff must submit an adequate proof of loss before he can recover penalties under Sections 22:1892 and 22:1973. *Talbert v. State Farm Fire and Cas. Ins. Co.*, 2007-0211, pg. 8 (La. App. 4 Cir. 11/14/07); 971 So.2d 1206, 1212. Further, Plaintiffs' proof of loss, which consisted of documentation of work performed by, and money paid to, M&H, was inconsistent with testimony from M&H, which asserted that it had performed no work on Plaintiffs' residence and had received no money from Plaintiffs.[5] April 30, 2009 Sworn Statement of Candince McMillian, pp. 8 - 12, Exhibit 5 in support of Motion for Summary

[5] These inconsistencies are discussed in greater detail in the Court's March 29, 2010 Order (Rec. Doc. 125).

Judgment Based Upon Plaintiffs' Submission of Fraudulent Receipts and Documents. Based upon these inconsistencies, State Farm concluded that Plaintiffs had submitted fraudulent documents in support of their claim, and therefore denied their claim. Motion at pg. 11. Plaintiffs' insurance policy with State Farm provides that they are not entitled to insurance proceeds if they make a material misrepresentation regarding any claims made under the policy. *Id.* Though the Court is unable to determine, at this stage in the proceedings, that Plaintiffs did in fact submit fraudulent documents in support of their claim (*see* March 29, 2010 Order (Rec. Doc. 125)), the Court is also unable to determine, based on the available evidence, that the documents are *not* fraudulent. State Farm's fraud defense has therefore been asserted in good faith, and Plaintiffs' claim for "bad faith" penalties fails for this independent reason.

Based upon the record before the Court, no reasonable jury could conclude that State Farm's refusal to satisfy Plaintiffs' insurance demands was arbitrary, capricious, or without probable cause. *R.L. Lucien Tile Co.,* 8 So.3d 753, *citing* La. Rev. Stat. § 22:1892 and La. Rev. Stat. § 22:1973. State Farm considered Plaintiffs' claim, and tendered insurance proceeds to Plaintiffs based on their claim, in a timely fashion. State Farm was entitled to withhold further payment based upon the good faith defense that the damage to Plaintiffs' residence, upon which Plaintiffs' claim is predicated, was caused by arson, a peril not covered by Plaintiffs' insurance policy. State Farm was independently entitled to withhold further payment based upon Plaintiffs' failure to submit adequate proof of their loss until April of 2009, and, after this submission, was entitled to continue withholding payment based upon a reasonable belief that Plaintiffs' proof of loss was fraudulent. There is a total absence of evidence that would support a finding that State Farm has acted in an arbitrary or capricious manner, or without probable cause.

Plaintiffs’ claims for “bad faith” penalties are therefore without merit.

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment Based Upon Plaintiffs' Allegations of “Bad Faith” (Rec. Doc. 99)** is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs’ claims for “bad faith” penalties are **DISMISSED**.

This 30th day of March 2010.

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE